1   Jerry L. Steering; SBN 122509
    LAW OFFICE OF JERRY L. STEERING
2   4063 Birch Street
    Suite 100
3   Newport Beach, CA 92660
    (949) 474-1849
    (949) 474-1883 Fax
4   jerrysteering@yahoo.com

5   Attorney for plaintiff Andrea Heath

6               UNITED STATES DISTRICT COURT

7               CENTRAL DISTRICT OF CALIFORNIA

8   ANDREA HEATH,                          Case No. CV12-02318 PSG (OPx)

9                                          PLAINTIFF'S MEMORANDUM OF
         Plaintiff,                        POINTS AND AUTHORITIES IN
10                                         OPPOSITION IN CITY DEFENDANTS'
                                           MOTION TO DISMISS PLAINTIFF'S
11           vs.                           COMPLAINT (F.R.Civ.P. 12(b)(6))

12  CITY OF DESERT HOT SPRINGS,            PRESENT HEARING DATE FOR
    ANTHONY SCLAFANI, PATRICK              MOTIONS TO DISMISS:
13  WILLIAMS, EDWIN SMITH, KATE
    SINGER, JASON SIMPSON, RICK                      JANUARY 28, 2013
14  DANIELS, GABRIELLA MENDOZA,
    GUSTAVO PAIZ, PAUL TAPIA and           TIME:      1:30 P.M .
15  DOES 1 through 10, inclusive,
                                           CTRM:      880
16
         Defendants.                       UNITED STATES DISTRICT JUDGE
17                                         PHILIP S. GUTIERREZ

18

19

20

21

22

23

24

25

        PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
            IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iv

FACTUAL ALLEGATIONS OF FIRST AMENDED COMPLAINT . . . . . . . . . . . .1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    AN ORDER SHOULD ISSUE OUT
      OF THIS HONORABLE COURT,
      DENYING THE CITY DEFENDANTS'
      MOTION TO DISMISS PLAINTIFF'S
      FIRST AMENDED COMPLAINT,
      AS HER CLAIMS FOR RELIEF
      UNDER 42 U.S.C. § 1983 ARE PROPERLY
      BROUGHT IN THIS ACTION.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

      A. Plaintiff's First Amendment Retaliation Claims
         Are Properly Brought In This Action Because
         Notwithstanding *Dahlia v. Rodriguez*, Under
         The Circumstances Of This Case, Plaintiff's
         Complaints To The FBI, Her Grand Jury
         Testimony, And Her Deposition Testimony,
         Were All Made As A Private Citizen, And
         Not In The Performance Of Plaintiff's Official
         Job Duties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

         1. First Amendment Retaliation Cases Involving
            Public Employees – Generally.  . . . . . . . . . . . . . . . . . . . . . . . .2

         2. First Amendment Retaliation Cases Involving
            Public Employees – Speech Made As Private
            Citizen Or Pursuant To Official Job
            Duties – Question Of Fact Or Question Of Law.  . . . . . . . . . . . . . 3

         3. Because Even Under *Huppert,* There Are Several
            Incidents Of Speech By Plaintiff That Are
            Protected By The First Amendment, Defendants'
            Motion To Dismiss Should Be Denied. . . . . . . . . . . . . . . . . . . . 7

         4. Defendants' Motion To Dismiss Should Also
            Be Denied Because Plaintiff Adequately

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

i

Alleges That She Suffered The First Amendment
Retaliation Complained Of , As A Result Of
Official Policy, Custom And Practice. . . . . . . . . . . . . . . . . . . . . . 9

5.  Defendants' Motion To Dismiss Should Also
Be Denied Because Plaintiff Adequately
Alleges Facts Upon Which Liability May
Be Imposed Against The Individual
Defendants To This Action On Plaintiff's
Section 1983 Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

6.  Defendants' Motion To Dismiss Should
Also Be Denied Because Plaintiff's Complaint
Was Filed Within The Applicable Statute
Of Limitations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    a.   statute of limitations for events within
         two years of the filing of the plaintiff's
         original complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    b.   the statute of limitations for plaintiffs claims\
         that arose more than two years before the filing
         of the plaintiff's original complaint, is tolled
          by the continuing violation doctrine.  . . . . . . . . . . . . . . 11

         i.  The Continuing Violation Doctrine Permits
             Plaintiff To Obtain Redress For The Entire
             Course Of Retaliatory Conduct By Defendants
             In This Action.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

             aa.  Morgan and the continuing violation
                  doctrine.  . . . . . . . . . . . . . . . . . . . . . . . . . . .12

             bb.  when a continuing violation is deemed
                  to occur.  . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

             cc.  defendants' actions are sufficiently similar
                  in kind  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

             dd.  defendants' actions occurred with reasonable
                  frequency . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

                       ee. defendants' actions did not acquire a
                            degree of permanence.  . . . . . . . . . . . . . . . . . . 18

II.     PLAINTIFF DID NOT FAIL TO EXHAUST HER
        ADMINSTRATIVE REMEDIES BY FAILING
        TO FILE A CLAIM WITH THE LABOR
        COMMISSIONER.   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

III.    PLAINTIFF DID NOT FAIL TO EXHAUST HER
        ADMINSTRATIVE REMEDIES BY FAILING TO FILE
        AN APPEAL OF THE CITY'S DECISION TO
        MEDICALLY RETIRE HER.   . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

        A.    Defendants Are Estopped From Claiming That
                  Plaintiff Failed To File Her Internal Administrative
                  Remedies Under The Doctrine Of Equitable Estoppel.  . . . . . . . . 20

           1.  Doctrine Of Equitable Estoppel – Generally.   . . . . . . . . . . 20

           2.  Defendants Are Estopped From Asserting That Plaintiff Failed
               To Exhaust Her Administrative Remedies,
               Because The Defendants Misrepresented To Plaintiff
               That Her Time To Request An Appeal Of The City
               Manager's Decision To Medically Retire Her
               Had Expired. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

           3.  Plaintiff Did Not Fail To Exhaust Her Internal
               Administrative Remedies Because The Memorandum Of
               Understanding Between The City And The Desert Hot
               Springs Police Association Does Not Provide For An
               Administrative Remedy For Fitness For Duty Hearings. . . . . . .24
           4.  Plaintiff Did File An Appeal Of The City's Decision To
               Retire Her. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

I.      AS DEFENDANTS WERE NOT SUED IN THEIR OFFICIAL
        CAPACITIES, BUT AS INDIVIDUAL PERSONS,
        DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED. . . . . 25
II.     AS PLAINTIFF'S FIRST AMENDED COMPLAINT
        CONTAINED SUFFICIENT FACTS TO SUBJECT THE

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

DEFENDANTS TO LIABILITY IN THIS ACTION,
DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED. . . . . 25

III.    PLAINTIFF PROPERLY AND TIMELY COMPLIED WITH THE
REQUIREMENTS OF THE CALIFORNIA TORT CLAIMS ACT. . . . . 25

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

TABLE OF AUTHORITIES

UNITED STATES SUPREME COURT CASES:

*Bd. of Regents v. Tomanio*, 446 U.S. 478 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Dahlia v. Rodriguez*, ___ U.S. ____ (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,5,6

*Garcetti v. Ceballos,* 547 U.S. 410 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . 2,3,4,5

*Hardin v. Straub*, 490 U.S. 536 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*O'Sullivan v. Felix*, 233 U.S. 318 (1914) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*National Rail Road Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) . . . . . . . . . .12, 13

*Wallace v. Kato* , 549 U.S. 384 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Wilson v. Garcia*, 471 U.S. 261 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

OTHER FEDERAL CASES:

*Anthoine  v. N. Central Counties Consortium*, 605 F.3d 740 (9th Cir. 2010) . . . . . . . . . 4

*Brodheim v. Cry*, 584 F.3d 1262 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Canatella v. Van De Kamp*, 486 F.3d 1128 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . .12

*Carpenteria Valley Farms Limited v. County of Santa Barbara*, 344 F.3d 822 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 12, 13

*Cervantes v. City of San Diego*, 5 F.3d 1273 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . .  13

*Clairmont v. Sound Mental Health*, 632 F.3d (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . 4

*Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*County of Los Angeles v. City of Alhambra*, 27 Cal. 3d 184 (1980) . . . . . . . . . . . . . . .20

*Dahlia v. Rodriguez*, ___ U.S. ____ (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 7

*Douglas v. Noelle*, 567 F.3d 1103 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Eng v. Cooley*, 552 F.3d 1062 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Freitag v. Ayers*, 468 F.3d 528 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

*Huppert v. City of Pittsburg*, 574 F.3d 696 (9th Cir. 2009) . . . . . . . . . . .4, 5, 6, 7, 8, 9, 25

*Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241 (C.D. Cal. Sept. 26, 2006) . . . . . . . . 20

*Johnson v. California*, 207 F.3d 650 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Karim Panahi v. Los Angeles Police Department*, 839 F.2d 621 (9th Cir. 1988) . . . . . . 10

*Karl v. City of Mountlake Terrace*, 678 F.3d 1062 (9th Cir. 2012) . . . . . . . . . . . . . . . . 4

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 9

*Lucchesi v. Bar-O Boys Ranch*, 353 F.3d 691 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . .12

*Miller v. Gammie,* 335 F.3d 889 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Morales v. Jones,* 494 F.3d 590 (7th Cir.2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Pierce v. Gilchrist*, 359 F.3d 1279 (10 Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Posey v. Lake Pend Oreille School Dist. No. 84*, 546 F.3d 1126 (9th Cir. 2008)   . . . . 3, 4

*Reilly v. Atlantic City,* 532 F.3d 216 (3d Cir.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Robinson v. York*, 566 F.3d 817 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . .4, 5, 6

*Sain v. City of Bend*, 309 F.3d 1134 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Supermail Cargo, Inc. v. United States*, 68 F.3d 1204 (9th Cir. 1995) . . . . . . . . . . . . . 13

*Torres v. City of Santa Ana*, 108 F.3d 234 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . 13


<u>FEDERAL STATUTES:</u>

F.R.Civ.P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 2

18 U.S.C. § 242) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18 U.S.C. § 1512 . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . 8

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 6, 8, 10, 12, 13

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

42 U.S.C. § 2000e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

FEDERAL CONSTITUTIONAL PROVISIONS:

U.S. Const. Amend. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

CALIFORNIA CASES:

*Anton v. San Antonio Comm. Hosp.* 19 Cal.3d 802 (1977) . . . . . . . . . . . . . . . . . . . . . . . 24

*Birschtein v. New United Motor Manufacturing, Inc.,*
92 Cal.App.4th 994 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15, 17, 18

*Campbell* v. *Regents o/the Univ. of California,* 35 Cal. 4th 311 (2005) . . . . . . . . . . . . 20

*City of Long Beach v. Mansell*, 3 Cal.3d 462 (1970) . . . . . . . . . . . . . . . . . . . . . . . 20

*County of Los Angeles v. City of Alhambra*, 27 Cal. 3d 184 (1980) . . . . . . . . . . . . . . . 20

*Denny v. Universal City Studios*, 10 Cal.App.4th 1226 (1992) . . . . . . . . . . . . . . . . . 21, 23

*Dominguez v. Washington Mutual Bank* , 168 Cal.App.4th 714 (2008) . . . . . . .13, 14, 15

*Lentz v. McMahon*, 49 Cal.3d 393 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20, 21

*Lerner v. Board of Education*, 59 Cal.2d 382 (1963) . . . . . . . . . . . . . . . . . . . . . . . . .21

*Lloyd v County of Los Angeles*, 172 Cal.App.4th 320 (2009) . . . . . . . . . . . . . . 18, 19, 20

*McCoy v. Board of Supervisors*, 18 Cal.2d 193 (1941) . . . . . . . . . . . . . . . . . . . . . . . . 7

*Mokler v. County of Orange*, 157 Cal.App.4th 121 (2007) . . . . . . . . . . . . . . . . . . . . 24

*Nazir v. United Airlines, Inc.,* 178 Cal.App.4th 243 (2009) . . . . . . . . . . . . . . . . . . . .14

*People v. Corey* , 21 Cal.3d 738 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Ogo Associates v. City of Torrance*, 37 Cal.App.3d 830 (1974) . . . . . . . . . . . . . . . . . . 24

*Richards v. CH2M Hill, Inc.*, 26 Cal.4th 798 (2001) . . . . . . . . . . . . . . . . . . . . 13, 14, 17

*Shuer v. County of San Diego*, 117 Cal. App. 4th 476 (2004) . . . . . . . . . . . . . . .21, 22, 23

*Skelly v. State Personnel Bd.*, 15 Cal.3d 194 (1975) . . . . . . . . . . . . . . . . . . . . . . . . 8, 17

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

*Strong v. County of Santa Cruz*, 15 Cal.3d 720 (1975) . . . . . . . . . . . . . . . . . . . . . . . . .20

*Tyra v. Board of Police*, 32 Cal.2d 666 (1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*West Lake Community College v. Superior Court*, 17 Cal.3d 465 (1976) . . . . . . . . 21, 23

*Yanowitz v. L'Oreal USA, Inc*., 36 Cal.4[th] 1028 (2005) . . . . . . . . . . . . . . . . . . . . . 14

CALIFORNIA STATUTES:

Cal. Code Civ. Proc. §§ 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

Cal. Civ. Proc. Code § 335 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Cal. Civ. Proc. Code § 335.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Cal. Evid. Code § 1043 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

Cal. Evid. Code § 1044 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

Cal. Evid. Code § 1045 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

Cal. Gov't Code § 3305 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Cal. Gov't Code § 945.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

Cal. Labor Code § 98.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     18

Cal. Labor Code § 1102.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

MISCELLANEOUS TREATISES:

(Black's Law Dictionary, Fifth Edition.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

1   Jerry L. Steering; SBN 122509
    LAW OFFICE OF JERRY L. STEERING
2   4063 Birch Street
    Suite 100
3   Newport Beach, CA 92660
    (949) 474-1849
4   (949) 474-1883 Fax
    jerrysteering@yahoo.com

5   Attorney for plaintiff Andrea Heath

6                    UNITED STATES DISTRICT COURT

7                   CENTRAL DISTRICT OF CALIFORNIA

8   ANDREA HEATH,                         Case No. CV12-02318 PSG (OPx)

9                                         PLAINTIFF'S MEMORANDUM OF
         Plaintiff,                       POINTS AND AUTHORITIES IN
10                                        OPPOSITION IN CITY DEFENDANTS'
                                          MOTION TO DISMISS PLAINTIFF'S
11        vs.                             COMPLAINT (F.R.Civ.P. 12(b)(6))

12  CITY OF DESERT HOT SPRINGS,           PRESENT HEARING DATE FOR
    ANTHONY SCLAFANI, PATRICK             MOTIONS TO DISMISS:
13  WILLIAMS, EDWIN SMITH, KATE
    SINGER, JASON SIMPSON, RICK                        JANUARY 28, 2013
14  DANIELS, GABRIELLA MENDOZA,
    GUSTAVO PAIZ, PAUL TAPIA and          TIME:      1:30 P.M .
15  DOES 1 through 10, inclusive,
                                          CTRM:      880
16
         Defendants.                      UNITED STATES DISTRICT JUDGE
17                                        PHILIP S. GUTIERREZ

18

19         FACTUAL ALLEGATIONS OF FIRST AMENDED COMPLAINT

20         Because Plaintiff has compressed the Factual Allegations Of First Amended

    Complaint into approximately 10 pages of text, and as there are presently two Motions to
21
    Dismiss brought pursuant to F.R.Civ.P. 12(b)(6) (i.e. that of City defendants City Of
22
    Desert Hot Springs, Patrick Williams, Edwin Smith, Kate Singer, Jason Simpson, Rick
23
    Daniels, Gabriella Mendoza and Gustavo Paiz, and that of defendants ANTHONY
24
    SCLAFANI and PAUL TAPIA), and because there are so many issues of law that both
25
    groups of defendants have raised, it is virtually impossible to show these important

         PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
              IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

                                          1

material facts in the amount of space that is available for this instant memorandum of points and authorities. Therefore, Plaintiff Andrea Heath begs this Honorable Court's indulgence, and respectfully requests that this Honorable Court take Judicial Notice of, and considers the Factual Allegations Of First Amended Complaint shown in Plaintiff's Memorandum Of Points And Authorities In Opposition In Defendants Sclafani's And Tapia's Motion To Dismiss Plaintiff's Complaint (F.R.Civ.P. 12(b)(6)), as if set forth in full herein, for the purposes of this instant Memorandum Of Points And Authorities In Opposition In City Defendants' Motion To Dismiss Plaintiff's Complaint.

## ARGUMENT

I. **AN ORDER SHOULD ISSUE OUT OF THIS HONORABLE COURT, DENYING THE CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT, AS HER CLAIMS FOR RELIEF UNDER 42 U.S.C. § 1983 ARE PROPERLY BROUGHT IN THIS ACTION.**

A. **Plaintiff's First Amendment Retaliation Claims Are Properly Brought In This Action Because Notwithstanding _Dahlia v. Rodriguez_, Under The Circumstances Of This Case, Plaintiff's Complaints To The FBI, Her Grand Jury Testimony, And Her Deposition Testimony, Were All Made As A Private Citizen, And Not In The Performance Of Plaintiff's Official Job Duties.**

1. **First Amendment Retaliation Cases Involving Public Employees – Generally.**

The First Amendment shields a public employee if he speaks as a citizen on a matter of public concern. *Garcetti v. Ceballos,* 547 U.S. 410, 414 (2006.)

> "public employees do not shed their First Amendment rights simply because they are employed by the government. The First Amendment shields a public employee if he speaks as a citizen on a matter of public concern.

*See, e.g., Ceballos,* 547 U.S. at 417.

> "In order to sustain a First Amendment retaliation claim, a public employee must show "(1) [t]he employee engaged in constitutionally protected speech, (2) the employer took adverse employment action against the employee, and (3) the employee's speech was a `substantial or motivating' factor in the adverse action."

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

*Posey v. Lake Pend Oreille School Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008.)

In *Eng v. Cooley,* the Ninth Circuit divined *"a sequential five-step"* inquiry to determine whether a First Amendment violation has taken place:

> *"(1) whether the plaintiff spoke on a matter of public concern;* **(2) whether the plaintiff spoke as a private citizen or public employee;** *(3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech".*

*Id.*, at 1070.

### 2. First Amendment Retaliation Cases Involving Public Employees – Speech Made As Private Citizen Or Pursuant To Official Job Duties – Question Of Fact Or Question Of Law.

> *" . . . when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."*

*Ceballos,* 547 U.S, at 421.

Accordingly, when a public employee asserts a First Amendment retaliation claim, one of the crucial threshold questions is whether the statement at issue was made *"pursuant to [his] official duties." Garcetti,* 547 U.S. at 417; *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009.) Though the Supreme Court in *Garcetti* did not *"articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate,"* 547 U.S. at 424, the Court nonetheless made clear that this inquiry is not one of formalisms and nomenclature, but one of practical substance:

> *"While the Supreme Court did not delineate a "comprehensive framework" for determining when speech is pursuant to an employee's job function, it provided guidance for lower courts to follow when making such a decision." Ceballos,* 547 U.S. at 424, 126 S.Ct. 1951.

> *Ceballos said that speech which "owes its existence to an employee's professional responsibilities" is not protected by the First Amendment. Id. at 421, 126 S.Ct. 1951. Additionally,* **if the public employee was  paid for the speech—e.g.,**

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

3

> ***drafting a memorandum, creating a report, advising a supervisor—then that
> compensation might be indicative of the nature of the speech.*** *Id. at 422, 126
> S.Ct. 1951. An adverse employment action for this type of speech "does not
> infringe any liberties the employee might have enjoyed as a private citizen. It
> simply reflects the exercise of employer control over what the employer itself has
> commissioned or created." Id. at 421-22, 126 S.Ct. 1951. Our inquiry should be
> practical and look beyond the job description to the duties the employee actually
> performs. Id. at 424, 126 S.Ct. 1951. Speech which has "no official significance"
> and bears "similarities to [actions taken] by numerous citizens everyday" falls
> outside the ambit of an employee's job duties and would be protected by the First
> Amendment. Id. at 422, 126 S.Ct. 1951."*

*Huppert v. City of Pittsburg*, 574 F.3d 696,704 (9th Cir. 2009) (emphasis added.)

Following *Garcetti*, the Ninth Circuit regularly treated the scope of an
employee's job duties as a question of fact. *See, e.g., Robinson v. York*, 566 F.3d
817, 823-24 (9th Cir. 2009); *Eng*, 552 F.3d at 1071. This fact question is part of a mixed
question of law and fact, in which the scope of job duties is a question of fact and the
constitutional significance of those facts to the First Amendment analysis is a question of
law[1]. In *Robinson v. York*, *supra*, a Los Angeles County police officer who alleged he
was denied a promotion because he testified in a discrimination lawsuit against his
department **and filed several misconduct reports with his employing police agency**, in
which he alleged various types of illegal conduct by fellow officers including battery and
excessive force. *Robinson*, 566 F.3d at 820-21. The district court denied the defendants
qualified immunity, and the Ninth Circuit affirmed. The Ninth Circuit specifically
rejected defendants' claim that qualified immunity was appropriate because Robinson's
reports were part of his job duties as a matter of law. Rather, the Court held, Robinson's

---

[1] *See, Eng*, 552 F.3d at 1071; *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d
1121, 1129 (9th Cir. 2008); *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1071 (9th
Cir. 2012); *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1105-06 (9th Cir. 2011);
*Anthoine v. N. Central Counties Consortium*, 605 F.3d 740, 749-50 (9th Cir. 2010.)
Under these decisions, the extent of an employee's job responsibilities cannot be
determined categorically as a matter of law, but must instead be analyzed at a practical,
concrete level. This treatment is consistent with the Supreme Court's admonition that
courts should avoid using "[f]ormal job descriptions" to stand in for a context specific
inquiry into the "the duties an employee actually is expected to perform." *Garcetti*, 547
U.S. at 424-25.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

4

job duties were a disputed question of fact that a court of appeals lacks jurisdiction to adjudicate on appeal from a denial of qualified immunity. *Id.* at 823-24.

However, in *Huppert v. City of Pittsburg*, 574 F.3d 696,704 (9th Cir. 2009), a divided panel of the Ninth Circuit, considering the job responsibilities of a Pittsburg, California, police officer, broke from *Robinson* and the rest of the Ninth Circuit's post-*Garcetti* jurisprudence, and engaged in the type of abstract inquiry rejected in *Garcetti*.

Huppert had provided information to the district attorney, the FBI, and a county grand jury, all investigating corruption within the Pittsburg Police Department, and he and his partner / co-plaintiff had also filed a report concerning their investigation into corruption, gambling, and drug activity by members of the Department at a city owned golf course. *Id.*, 574 F.3d at 699, 703. Two of the reports (to the DA and regarding the golf course) were made pursuant to orders the plaintiffs had been given and, therefore, fell within their duties, *Id.* at 705-06, but the FBI and grand jury disclosures were not the product of any such orders. Instead of engaging in the "practical" inquiry *Garcetti* prescribed to determine whether these communications fell within Huppert's job duties, *Garcetti*, 547 U.S. at 424, the panel majority reached back to dicta from a seventy-three-year-old California Court of Appeal decision, for a job description that the panel majority read as applying broadly to all California peace officers. *Huppert*, 574 F.3d at 707. Because this broad description classified any reporting of any criminal activity to any law enforcement agency or, even the officer's own, or testifying in court in a criminal case[2] is inherently a part of a police officer's job, the panel majority ruled that Huppert's communications to the FBI and the grand jury were unprotected. *Id.* at 706-10. Thus, *Huppert* held that for California police officers, in contrast to all other public employees in the Ninth Circuit, that the scope of their job duties is determined as a matter of law, without reference to *"the duties an employee actually is expected to perform." Garcetti*, 547 U.S. at 424-25. However, as shown in the case trumpeted by defendants on Plaintiff's Section 1983 claims, *Dahlia v. Rodriguez*, ___ U.S. ____ (2012), a decision of

---

[2] Presumably, only for the prosecution, as to testify to the innocence of a criminal defendant would not be the reporting of crime, but the dispelling of it.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

5

one three-Judge panel of the Ninth Circuit cannot overrule another; only subsequent higher authority or an *en banc* Opinion on a Petition for Rehearing can. *See, Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003); *Dahlia v. Rodriguez*, ___ U.S. ____ (2012.).

Thus, as *Robinson v. York*, *supra*, could not have been overruled by either *Huppert* or *Dahlia,* and was not[3], there is an intra-circuit split of authority in the Ninth Circuit as to whether a California peace officer's report(s) of criminal misconduct by his/her fellow officers to law enforcement official is entitled to First Amendment protection[4].

As shown above, the case trumpeted by defendants on Plaintiff's Section 1983 claims, *Dahlia v. Rodriguez*, ___ U.S. ____ (2012); a decision of one three-Judge panel of the Ninth Circuit. However, *Dahlia* is no longer good law[5]; at least for the time being; a Petition for Rehearing En Banc having been granted in that case on December 11, 2012. Moreover, considering the language used by the Ninth Circuit in reluctantly affirming the district court's dismissal of Dahlia's complaint, it seems likely that *Dahlia* will be

---

[3] In fact, in *Huppert*, that was decided in 2009 just like *Robinson*, the Ninth Circuit actually cites *Robinson* for the proposition that the issue of fact exists as to whether a peace officer who reports crimes (i.e. batteries and use of excessive force) to a police agency, even his own, is entitled to first amendment protection:

> ***"In determining whether Robinson's reports were filed pursuant to his official duties, we stated that the "scope of Robinson's duties is a question of fact. [W]hen there are genuine and material disputes as to the scope and content of the plaintiff's job responsibilities, the court must reserve judgment ... until after the fact finding process." Id. at 823-24 (internal quotation marks and citations omitted; bracket and ellipses in original). We concluded that we must "assume the resolution of this dispute in the non-moving party's favor." Id. at 824 (citing Eng, 552 F.3d at 1067)."***

*Huppert*, 574 F.3d at 718 (emphasis added.)

[4] *See also*, *Freitag v. Ayers*, 468 F.3d 528 (9th Cir. 2006)(prison guard's complaints to Inspector General about sexual harassment at prison entitled to First Amendment protection.

[5] Chief Judge Kozinski's Order of December 12, 2012 shows:

**"KOZINSKI**, Chief Judge:

Upon the vote of a majority of nonrecused active judges, it is ordered that this case be reheard en banc pursuant to Federal Rule of Appellate Procedure 35(a) and Circuit Rule 35–3. The three-judge panel opinion shall not be cited as precedent by or to any court of the Ninth Circuit."

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

changed; to reverse, rather than affirm, the award of summary judgment to the defendants.

### 3. Because Even Under *Huppert,* There Are Several Incidents Of Speech By Plaintiff That Are Protected By The First Amendment, Defendants' Motion To Dismiss Should Be Denied.

As set forth in Plaintiff's First Amended Complaint, plaintiff gave three formal statements to the FBI; two in April of 2007 (FAC ¶ 25; HEATH DECL ¶¶ 13-14), and the second on October 20, 2009 (FAC ¶ 94; ) Although at the time that Plaintiff first complained to the FBI about crimes by DHSPD officers in April of 2007, she was an **"active duty"** sworn peace officer, employed by DHSPD (FAC ¶ 25; HEATH DECL ¶¶ 13-14), when Plaintiff made her second formal statements to the FBI about federal crimes by DHSPD, she was out on a medical disability leave, was not getting paid by the City, and was collecting medical disability benefits (FAC ¶ 72-94; HEATH DECL ¶¶ 13-14), and had no professional duties at all (HEATH DECL ¶ 14.) A California public employee who is out on leave of absence has no professional duties of his/her office. *See, McCoy v. Board of Supervisors*, 18 Cal.2d 193, 197 (1941) (Chief Engineer of Building and Construction of Los Angeles County, deemed not to have any duties of his office while out on a leave of absence, when called-up from the Marine Corps Reserves to active duty Marine Corps status.) A "leave of absence" is defined as a *"Temporary absence from employment or duty with intention to return, during which time remuneration and Seniority may or may not be suspended"* (Black's Law Dictionary, Fifth Edition.) Even an active duty California police officer who is not out on a leave of absence, and in his/her police uniform can be deemed to not be acting in the performance of his/her professional duties, given the right circumstances. *See*, *People v. Corey*, 21 Cal.3d 738 (1978) (uniformed police officer who was *"moonlighting"* as security guard at private

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

business not in performance of his official duties of his office, even when preventing crime and arresting others, because he was getting paid by department store at that time.)

It matters not that Plaintiff was told by the City's Human Resources Department, pursuant to Chief of Police WILLIAMS statements to them, that while she was out on medical leave of absence from DHSPD, that she couldn't speak with the FBI, and, that, on several occasions, that Plaintiff followed the Chief's directives. WILLIAMS had no right to have told the Plaintiff not to speak with the FBI. *See,* 18 U.S.C. § 1512[6]. Plaintiff has pleaded that on October 20, 2009, that she met with FBI Special Agent Steve Novak ("NOVAK") about various federal crimes by DHSPD (i.e. 18 U.S.C. § 242), in spite of WILLIAMS' orders not to do so, and that at that time, she was out on medical leave of absence from DHSPD (FAC ¶ 72-94; HEATH DECL ¶¶ 13-14.) *Huppert* did not deal with any such situation, and *Huppert* cannot be read to include this "out on leave of absence" situation. Moreover, one of the reasons that the *Huppert* court found Huppert's speech not deserved of First Amendment protection, was the fact that Huppert authored his report pursuant to orders of his superiors. *Huppert,* 574 F. 3d at 706.

Moreover, Plaintiff showed in her First Amended Complaint that after her August 29, 2011 "*Skelly* hearing", and before SIMPSON had mailed to Plaintiff (on October 6, 2011) the notice to her that the City Manager has decided to accept the recommendation of SIMPSON and to involuntarily medically retire her, on September 28, 2001 Plaintiff testified at a deposition in a civil case against the City, SCLAFANI, HENDERSON and

---

[6] 18 U.S.C. § 1512; **TAMPERING WITH A WITNESS, VICTIM, OR AN INFORMANT**; (**b**)Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
(**2**)cause or induce any person to—
(**3**) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation [1] supervised release,,[1] parole, or release pending judicial proceedings . . . shall be fined under this title or imprisoned not more than 20 years, or both.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

8

other DHSPD officers about the Angelica Vargas torture incident (involving SCLAFANI and other DHSPD officers), and about other criminal conduct by DHSPD officers (FAC ¶ 266.) Giving deposition testimony in a civil action is protected by the First Amendment, *Morales v. Jones,* 494 F.3d 590 (7th Cir.2007), as is testifying in court. *Reilly v. Atlantic City,* 532 F.3d 216, 220 (3d Cir.2008). The fact that a public employee's speech concerned "the subject matter of [his] employment... is nondispositive [of First Amendment protection]" *Ceballos,* 547 U.S. at 421. Accordingly, even under *Huppert,* Plaintiff's October 20, 2009 statement to the FBI, and her deposition testimony in the *Moore* case were still acts of protected speech. Defendants' motion to dismiss Plaintiff's First Amended Complaint should be denied.

> ### 4. Defendants' Motion To Dismiss Should Also Be Denied Because Plaintiff Adequately Alleges That She Suffered The First Amendment Retaliation Complained Of, As A Result Of Official Policy, Custom And Practice.

In paragraph 18 of Plaintiff First Amended Complaint, she shows:

*"18. At all times complained of herein, all of said natural defendants created and were acting pursuant to, the customs, policies, usages and practices of the CITY for, inter alia: 1) retaliating against persons for exercising their first amendment right to freedom of speech; 2) retaliating against persons for testifying before federal and state Grand Juries about police misconduct by DHSPD officers, 3) retaliating against persons for exercising their first amendment right to petition the government for redress of grievances, such as complaining to police / law enforcement authorities about police misconduct by DHSPD officers, and by retaliating against persons for truthfully testifying at depositions in lawsuits brought against other DHSPD police officers and other personnel."*

*"Section 1983 also imposes liability upon municipalities for constitutional deprivations  resulting from actions taken pursuant to government policy or custom. Monell v. Dep't of  Social Services, 436 U.S. 658, 694, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). In this circuit, a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss "even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." Shah v. County of Los Angeles, 797 F.2d 743, 747 (9th Cir. 1986)."*

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

*Karim Panahi v. Los Angeles Police Department*, 839 F.2d 621, 624 (9th Cir. 1988); *See also, Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001.)

Accordingly, plaintiff has sufficient pleaded her Monell claim against defendant City of Desert Hot Springs for the purpose of a Motion to Dismiss.

**5. Defendants' Motion To Dismiss Should Also Be Denied Because Plaintiff Adequately Alleges Facts Upon Which Liability May Be Imposed Against The Individual Defendants To This Action, And Against The City, On Plaintiff's Section 1983 Claims.**

Section 1983 liability may be imposed against those persons acting under color of law who subject, or who causes to be subjected, any person to a deprivation of their federal constitutional or federal rights. *Pierce v. Gilchrist*, 359 F.3d 1279, 1292 (10 Cir. 2004.)  On page 10 of their memorandum in support of their motion to dismiss, the City defendants make the argument: *"Liability Against the Individual Defendants Cannot Be Established Since They Were Not "Final Policymakers" for the City"*.  However, there is no requirement that a Section 1983 defendant be any sort of policymaker to be subjected to Section 1983 liability. Moreover, each of the defendants has been accused in this action of acting in joint, concerted and conspiratorial action to retaliate against Plaintiff for her whistleblowing, and the Plaintiff has made sufficient factual allegations in this action to impose direct Section 1983 liability against the individual defendants. The final policymaker doctrines are generally to impose and impute liability to a public entity for the actions of its public officers; not for personal liability. Defendants' motion to dismiss Plaintiff's complaint should be denied.

**6. Defendants' Motion To Dismiss Should Also Be Denied Because Plaintiff's Complaint Was Filed Within The Applicable Two Year Statute Of Limitations.**

**a. statute of limitations for events within two years of the filing of the plaintiff's original complaint**

The statute of limitations applicable to a Section 1983 action, is the residual personal injury statute of limitations of the state in which the cause of action arose;

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

10

*Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009.) The California residual personal injury statute is Cal. Code Civ. Proc. § 335.1[7], that, as of January 1, 2003, provides a **two year** statute of limitations. Defendants reference to *Carpenteria Valley Farms Limited v. County of Santa Barbara*, 344 F.3d 822 (9th Cir. 2003) is misplaced, as the incidents upon which that case was decided took place prior to January 1, 2003. *See*, California *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 701 n.3 (9th Cir. 2009.) Accordingly, as the Plaintiff's original complaint was filed on March 19, 2012, and as March 18, 2012 was a Sunday, without even applying any tolling doctrines, the last day to file a lawsuit for a cause of action that accrued on March 18, 2010, is March 19, 2012. *See*, Cal. Code Civ. Proc. § 10 (Sundays are considered holidays for lawsuit filing purposes) and 12a (if the last day to file a lawsuit is a holiday, the time to file is enlarged to the next day that isn't a holiday.) Thus, as to any of Plaintiff's Section 1983 claims, without even applying any tolling doctrines, any cause of action that accrued on March 18, 2010 or later is not time barred, and defendants' Motion to Dismiss should be denied. Moreover, as to any events complained of in this action that preceded March 18, 2010, Plaintiff shows that the statute of limitations has also not run on the same, based on the continuing violation doctrine.

        b. **the statute of limitations for plaintiff's claims that arose more than two years before the filing of the plaintiff's original complaint, is tolled by the continuing violation doctrine.**

        i. **The Continuing Violation Doctrine Should Permit Plaintiff To Obtain Redress For The Entire Course Of Retaliatory Conduct By Defendants In This Action.**

        aa. **Morgan and the continuing violation**

---

[7] Cal. Civ. Proc. Code § 335: *"The periods prescribed for the commencement of actions other than for the recovery of real property, are as follows:"*
Cal. Civ. Proc. Code § 335.1: *"Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another."*

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

**doctrine.**

As shown above, Congress did not establish a statute of limitations for actions brought in federal court under 42 U.S.C. § 1983. Also, as shown above, when such a void occurs, federal courts have routinely "borrowed" the state law of limitations governing the states' residual personal injury actions. *Tomanio*, 446 U.S. at 478.  Limitation borrowing was adopted for civil rights actions filed in federal courts as early as 1914, in *O'Sullivan v. Felix*, 233 U.S. 318 (1914.) In addition to "borrowing" state statute of limitations for Section 1983 action, federal courts should also borrow all applicable provisions for tolling the limitations period found in state law. *See, Wallace v. Kato*, 549 U.S. 384, 394 (2007);  *Hardin v. Straub*, 490 U.S. 536, 539 (1989);  *Bd. of Regents v. Tomanio*, 446 U.S. 478, 484-85 (1980); *Canatella v. Van De Kamp*, 486 F.3d 1128, 1132 (9th Cir. 2007);  *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009);  *Lucchesi v. Bar-O Boys Ranch*, 353 F.3d 691, 694 (9th Cir. 2003); *Sain v. City of Bend*, 309 F.3d 1134, 1139 (9th Cir. 2002);  *Johnson v. California*, 207 F.3d 650, 653 (9th Cir. 2000) (per curiam.)

Defendants cite *National Rail Road Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) which was a Title VII[8] case that refused to apply the continuing violation doctrine, and held that the defendant was required to file a lawsuit with the limitations period for each discrete act by the defendants.  Defendants also cite *Carpenteria Valley Farms, Ltd. v. County of Santa Barbara*, 344 F.3d 822 (9th Cir. 2003), which held that the holding in *Morgan* applies to 42 U.S.C. § 1983 cases. Respectfully, it appears that the Ninth Circuit misapplied the *Morgan* case to 42 U.S.C. § 1983 actions. There is no analysis for the great leap that the Ninth Circuit made in that case; to refuse to apply the continuing violation doctrine in a Section 1983 action.

*Morgan* was a Title VII case that Congress provided a statute of limitations for (42 U.S.C. § 2000e. However, since Congress did not enact a statute of limitations for 42 U.S.C. § 1983 cases, the Ninth Circuit should have borrowed not only the state residual

---

[8] Title VII Of the Civil Rights Act of 1964.

personal injury statute of limitations, but also the **accompanying state tolling doctrines.** The Ninth Circuit simply borrowed *Morgan* (each discrete act doctrine) instead of borrowing state tolling laws; notwithstanding that the Ninth Circuit still nonetheless borrows state tolling laws (i.e. Cal. Gov't Code § 945.3, that tolls the running of the statute of limitations for a Section 1983 action, while the Section 1983 plaintiff's criminal case is being prosecuted for the same incident giving rise to the defendant's section 1983 claim. *Torres v. City of Santa Ana*, 108 F.3d 234 (9th Cir. 1997.)

Although the plaintiff realizes that *Carpenteria Valley Farms*, states not to employ the continuing violation doctrine in Section 1983 cases, the Supreme Court cases still hold otherwise (that when there is no statute of limitations provided by Congress for a federal claim, that the district court should borrow state law statute of limitations as well as state tolling doctrines. Moreover, the question of equitable tolling cannot be decided on a motion to dismiss. *See, Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995); *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993).

### bb.  when a continuing violation is deemed to occur.

Under the continuing violation doctrine, a cause of action is timely if discriminatory practices occurring outside the limitations period, continued into that period. *Dominguez v. Washington Mutual Bank* , 168 Cal.App.4th 714, 721 (2008). Thus, a continuing violation will be found if the employer's unlawful acts or omissions: (i) are sufficiently similar in kind; (ii) have occurred with reasonable frequency; and (iii) have not acquired a degree of permanence. *Richards v. CH2M Hill, Inc.*, 26 Cal.4th 798, 823 (2001). As discussed below, Defendants' conduct satisfies each of these elements, and must, therefore, be viewed not as a series of singular discrete acts, but as *one* actionable *course* of conduct.

### cc. defendants' actions are sufficiently similar in kind

The Supreme Court of California prescribes a flexible approach to determining similarity, recognizing that similar kinds of unlawful employer conduct, such as acts of harassment or failures to reasonably accommodate disability, may take a number of different forms. *Id.*,  26 Cal.4th at 823; *Dominguez* , 168 Cal.App.4th  at 721:

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

13

> *"Discriminatory behavior comes in all shapes and sizes, and what might be an innocuous occurrence in some circumstances may, in the context of a pattern of discriminatory harassment, take on an altogether different character."*

*Id.* at 723.

Furthermore, it is well established that "similar kinds of unlawful employer conduct, such as acts of harassment... may take a number of different forms." *Nazir v. United Airlines, Inc.,* 178 Cal.App.4[th] 243, 270 (2009.)  In *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4[th] 1028, 1059 (2005), the California Supreme Court extended the continuing violation doctrine in *Richards,* to apply to cases of retaliation as well as harassment.

In *Dominguez,* the plaintiff's co-worker used slurs and other attacks relating to the plaintiff's sexual orientation, until the plaintiff complained about it. *Id.*, 168 Cal.App.4th at 717-18. The defendant co-worker stopped making the offensive comments but began interfering with Dominguez' work by several means:

> *"throwing balls of paper that would jam up the wheels of her pallet jack; stacking heavy boxes in areas that blocked her access to various workstations; and by telling her that he had no mail to send, then later changing his mind after she had prepared all the other mail for distribution, forcing her to re-sort the mail and revise her written report about her work output. "*

*Id.* at 718.

In addition, the co-worker would whistle a tune that, while offensive, was not sexual-orientation-related. Both the defendant employer and the co-worker successfully argued, in support of their motion for summary judgment, that the co-worker's later conduct, consisting of interference and whistling an offensive tune, was "too dissimilar from the verbal abuse that was expressly based on Dominguez' sexual orientation, and occurred too sporadically...to qualify as continuing violations." *Id.* at 721.  In reversing the trial court's grant of summary judgment for the defendants, the Court of Appeal observed that:

> *"despite respondents' attempts to minimize Gutierrez' (the offending co-worker) conduct, Dominguez' account...depicts a months-long, continual campaign to make her work life miserable...A reasonable inference arises that this was just another way for Gutierrez to harass Dominguez about her sexual orientation without expressly saying so." Id. at 723-24. Thus, the Court of Appeal concluded*

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

14

that "*Dominguez raised triable issues of fact that a continuing violation occurred after Gutierrez stopped his sexual-orientation-themed verbal attacks.*" *Id.* at 723.

In *Birschtein v. New United Motor Manufacturing, Inc.,* 92 Cal.App.4th 994 (2001), the plaintiff's co-worker, Bonilla, would frequently harass her with crude and sexually-charged come-ons and remarks. *Id.*, 92 Cal.App.4th at 997-98. After *Birschtein* complained to management, Bonilla's come-ons and remarks stopped and "following plaintiff's complaint to management . . . Bonilla never spoke to her again." *Id.* at 998. Instead, after that complaint, Bonilla would pass by Birschtein's workstation several times per day and stare at her in a manner that was not sexually suggestive but which suggested to Birschtein that Bonilla was upset. *Id.* at 998-99. The defendants argued on summary judgment, that Bonilla's conduct falling within the one-year limitations period was not based on Birschtein's gender and was therefore not sufficiently similar to Bonilla's earlier verbal harassment to constitute a continuing violation. *Id.* at 1000, 1003. The trial court granted summary judgment for the defendants, and the Court of Appeal reversed. Observing that "*the requirements of similarity and permanence...are not to be taken literally,*" and that "*[c]ourts are to be mindful of the variety of different forms acts of harassment can take in evaluating the similarity prong of the continuing violation doctrine,*" the Court of Appeal concluded that Bonilla's conduct was arguably sufficiently related and ongoing to constitute "a 'continuing course of unlawful conduct, and thus pass muster under the *Richards* formulation of the continuing violation doctrine." *Id.* at 1005-06.

Like the defendants in *Dominguez* and *Birschtein,* Defendants here retaliated against Heath in a number of different ways, but with the same overall theme, purpose and goal. Defendants, without limitation: 1) gave her the "*silent treatment*"; 2) ridiculed her for "*ratting them out*" (making demeaning remarks about her in her presence, such as "*fat*", "*ugly*", "*rat*") ; 3) made false complaints about non-existent conduct by Plaintiff,

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

to put in her personnel file, without her knowledge[9]; 4) deliberately failed to back-her-up in the field in dangerous situations; 5) demoted her in rank from "Investigator" to "police officer"; 6) gave her a 5% pay reduction; 7) made ridiculous criticisms of her reports; 8) dispatched her to multiple calls at the same time (not done before Plaintiff spoke to the feds about DHSPD, and not done to other officers); 8) told her that she should look for a job at a different department; 9) told her she could not wear a uniform while on patrol; 10) told her she could not carry a gun while on patrol; 11) told her that she is on a *"hit list"* to be fired (many times, by fellow officers and by supervisors); 12) denying her overtimes hours; 13) relegated her to shredding old reports all day, instead of patrolling; 14) reduced her to *"trainee"* status, and made her patrol with "rookie" officers so she can learn from them; 15) told her that she might get killed; implying no back-up in field, and that she should retire, or she really might get killed; 16) unlawfully disclosing confidential work performance evaluations to the District Attorney's Office[10]; 17) humiliating her at a community policing meeting; 18) routinely loudly stating that they need extra *"cheese"* when Plaintiff was around, because they could smell a *"rat"*; 19) sent her to Officer's Survival School, without cause; 20) eventually took her off patrol; 21) placed her on a discipline program called the Performance Improvement Plan; 22) revoked a previous grant of medical leave until after Christmas 2009, because she defied Chief WILLIAMS' order to not meet with the FBI in November 2009; 23) issued her patrol cars and police radios that did not work; 24) sent her to calls involving *"shots fired"* and multi-party fights, without sending back-up, even when requested by Plaintiff; 25) refused to accommodate her "disability" (i.e. can't work with SCLAFANI as her supervisor), even though DHSPD "accommodated" SCLAFANI after he was Indicted, by taking him off police duties, and giving him an administrative job (i.e. vetting new police officer applicants); 26) ordered her to not meet with the FBI to complain of DHSPD

---

[9] A violation of the Peace Officers Bill of Rights Act ("POBRA"); Cal. Gov't Code § 3305.

[10] *See,* Cal. Evid. Code § 1043-1045.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

16

criminal conduct; a basic civil right of any American[11]; 27) made racist comments about Plaintiff; 28) took the bullets out of her duty rifle without her knowledge (placing her in [unknown] great danger); 29) left chocolate milk cartons by her computer (to remind her of her color); 30) knowingly falsely and unlawfully accusing her of being unfit for duty; 31) involuntarily retiring her / terminating her pursuant to a rigged / sham claim that she was unfit for duty; 32) causing her attorney to abandon her following her *Skelly*[12] hearing, so as to attempt to prevent her from appealing the City Manager's decision to involuntarily disability (non-industrial) retire her; 33) sent-out the letters making fun of her race; 34) sent her to an Orange County Sheriff's Department Requalification Academy, to drive her to quit; 35) sent the letter to her notifying her of the City Manager's decision to involuntarily disability (non-industrial) retire her, 17 days after the date shown on the letter; such letter advising her that she had thirty days to appeal said decision, along with telling her that her time to appeal had run, when it had not run; resulting in her not filing a document stating "I appeal"; and 36) terminating her employment relationship with DHSPD.

All of this was retaliation against the Plaintiff, for telling the FBI, a federal Grand Jury and lawyers in a deposition, that SCLAFANI, HENDERSON and other DHSPD officers tortured, beat, falsely arrested and framed innocent civilians.

### dd.  defendants' actions occurred with reasonable frequency

As with the similarity prong of the continuing violation analysis, California courts have leaned toward a broad interpretation of the doctrine in cases involving ongoing harassment. *Richards*, 26 Cal.4th at 811.  No court has opined as to how frequent "reasonably" frequent should be. However it is clear that the existence of gaps between incidents does not preclude the finding of a continuing violation.  In *Birschtein*, *supra*, the bad acts by non-supervising employees were *"intermittent and discontinuous,"* and

---

[11] A right guaranteed by the First Amendment's "right to petition the government for redress of grievances." *Brodheim v. Cry*, 584 F.3d 1262 (2009.)

[12] *Skelly v. State Personnel Bd.*, 15 Cal.3d 194 (1975.)

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

occurred over the course of several years. *Birschtein*, 92 Cal.App.4[th] at 997-99.  The Court of Appeal nevertheless held that plaintiff  Birschtein had presented evidence *"sufficient to meet the frequency requirement of the Richards formulation, at least for summary judgment purposes." Id.* at 1006.

Here, the Defendants' retaliation against Heath was constant after she spoke with the F.B.I. and testified (Grand Jury and deposition.)  Some of the overt acts of the Defendants were more egregious than others. However, the Defendants intentionally made every single day miserable for Heath.

### ee.    defendants' actions did not acquire a degree of permanence.

A degree of permanence is acquired when *"the harassing conduct stops, when the employee resigns, or when the employee is on notice that further efforts to end the harassment will be futile."  Dominguez,* 168 Cal.App.4th at 724; *See also*, *Richards*,  26 Cal.4th at 823. This prong of the continuing violation analysis ensures employees are not improperly encouraged, under pain of the statute of limitations and contrary to the intent of the Legislature in enacting FEHA, to take legal action before the informal conciliation process has run its course. *Id*. at 820-21; *Birschtein*, 92 Cal.App.4th at 1004.

Accordingly, all of the various acts of retaliation against the Plaintiff are actionable. She may have made a government tort claim when she was out on disability leave, but the retaliation just never stopped. Defendants' motion to dismiss should be denied.

### II.    PLAINTIFF DID NOT FAIL TO EXHAUST HER ADMINSTRATIVE REMEDIES BY FAILING TO FILE A CLAIM WITH THE LABOR COMMISSIONER.

In *Lloyd v County of Los Angeles*, 172 Cal.App.4th 320 (2009), the Court of Appeal held Lloyd filed a lawsuit alleging, *inter alia*, that he was laid-off from his County job as a heat and frost insulator, in retaliation for his complaints about asbestos removal at Los Angeles County-USC Medical Center (LAC-USC), and his refusal to remove asbestos without being duly certified. He brought suit under several statutory

Labor Code violations, that included a claim for violation of Cal. Labor Code § 1102.5[13]. Defendant County moved for summary judgment, claiming, *inter alia*, that Lloyd failed to exhaust his internal administrative remedies with the County's internal administrative procedures, and by not filing a retaliation claim with the California Labor Commissioner. In response to that argument, the California Court of Appeal held that the County internal administrative remedies did not provide a remedy for "whistleblower retaliation", and, therefore, Lloyd did not fail to exhaust the County's internal administrative remedies. The Court also held that a person may file a "whistleblower retaliation" claim with the California Labor Commissioner pursuant to Cal. Labor Code § 98.6 (such as a 1102.5 claim), **but is not required to do so as a prerequisite for filing a lawsuit in court.** *Id.*, 172 Cal.App.4[th] at 331[14]. Moreover, this position is buttressed by a July 2, 2007 letter

---

[13] Cal. Labor Code § 1102.5 provides in pertinent part:

*"1102.5.  (a) An employer may not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.*

*(b) An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.*

*(c) An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.*

*(d) An employer may not retaliate against an employee for having exercised his or her rights under subdivision (a), (b), or (c) in any former employment.*

*(e) A report made by an employee of a government agency to his or her employer is a disclosure of information to a government or law enforcement agency pursuant to subdivisions (a) and (b).*

*(f) In addition to other penalties, an employer that is a corporation or limited liability company is liable for a civil penalty not exceeding ten thousand dollars ($10,000) for each violation of this section."*

[14] The Court of Appeal also held that prior California cases have held that there is no requirement to file Labor Code violations claim with the California Labor Commissioner prior to filing a lawsuit in court, and that: *"We see no reason to differ with these decisions and to impose an administrative exhaustion requirement on plaintiffs seeking to sue for Labor Code violations."*

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

from the Labor Commissioner's counsel to a private lawyer, explaining that notwithstanding California federal district court decisions requiring such filings with the Labor Commissioner as a prerequisite to filing suit in court on an 1102.5 claim, that those decision erroneously applied *Campbell* v. *Regents o/the Univ. of California,* 35 Cal. 4th 311 (2005) in reaching those holdings, as Campbell merely required a California state university professor to comply with university internal administrative remedies before filing suit (*See*, July 2, 2007 letter from the Labor Commissioner; attached to Plaintiff's request for judicial notice in this instant motion as Exhibit "C".[15]) Accordingly, defendants motion to dismiss plaintiff's Labor Code claims, including her Section 1102.5 claim, should be denied.

### III. PLAINTIFF DID NOT FAIL TO EXHAUST HER ADMINSTRATIVE REMEDIES BY FAILING TO FILE AN APPEAL OF THE CITY'S DECISION TO MEDICALLY RETIRE HER.

#### A. Defendants Are Estopped From Claiming That Plaintiff Failed To File Her Internal Administrative Remedies Under The Doctrine Of Equitable Estoppel.

##### 1. Doctrine Of Equitable Estoppel – Generally.

The doctrine of equitable estoppel is founded on concepts of equity and fair dealing. *Strong v. County of Santa Cruz*, 15 Cal.3d 720, 725 (1975.) Estoppel may be asserted against the government "where justice and right require it." *Lentz v. McMahon*, 49 Cal.3d 393, 399 (1989.) The government will be bound by an equitable estoppel in the same manner as a private party, if the elements requisite to an estoppel against a private party are present and if, in the considered view of a court of equity, the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect on the public interest or policy that would result from the raising of the

---

[15] Court may take judicial notice of letter from Labor Commissioner, and the plaintiff not prays that this Honorable Court take judicial notice of said July 2, 2007 letter; said letter predating the *Lloyd* case. See, *Jimenez v. Domino's Pizza, Inc*., 238 F.R.D. 241, 245 (C.D. Cal. Sept. 26, 2006))(Court may take judicial notice of letter from Labor Commissioner.)

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

estoppel.  *City of Long Beach v. Mansell*, 3 Cal.3d 462 (1970); *County of Los Angeles v. City of Alhambra*, 27 Cal. 3d 184 (1980); *Lentz*, 49 Cal.3d 393.  The doctrine of estoppel has been applied against governmental entities in a variety of situations including when the government has mislead a Plaintiff such as in the present case. *Lerner v. Board of Education*, 59 Cal.2d 382 (1963); *Tyra v. Board of Police*, 32 Cal.2d 666 (1948); *Lentz*, 49 Cal.3d 393, 399 (1989.)

In addressing the doctrine of exhaustion of administrative remedies California courts have consistently held that a party may be estopped from asserting the exhaustion defense when their actions were misleading or wrongful.  In *West Lake Community College v. Superior Court*, 17 Cal.3d 465 (1976), the court ruled that a hospital's failure to inform a physician who was denied staff privileges of her right to appeal, that denial within the hospital's administrative structure would excuse the physician's failure to exhaust those remedies. *Id*. at 478.  In *Denny v. Universal City Studios*, 10 Cal.App.4th 1226, 1234 (1992), the court held that estoppel will apply where Plaintiff was misinformed or mislead by the administrative agency responsible for processing her charge and she relied on the misinformation or misrepresentation of that agency, causing her to fail to exhaust administrative remedies. The plaintiff in *Denny* went to the United States Equal Employment Opportunity Commission (EEOC) to complain of her treatment which included age discrimination, handicap discrimination and retaliation. An EEOC employee presented Denny with a prepared charge of discrimination, to be filed with the EEOC. The charge alleged only age discrimination. Denny objected to the omission of retaliation and handicap discrimination, but the representative replied that that was how a claim was commenced. Denny executed the charge, and it was filed with the agency.  *Id*. at 1231.

In *Shuer v. County of San Diego*, 117 Cal. App. 4th 476 (2004)*,* the County of San Diego dismissed Shuer, a psychiatrist, during her probationary period. *Id*. at 480. Following her dismissal, the Executive Officer of the Civil Service Commission informed Shuer that she could contest her termination at a hearing only if she alleged violation of her liberty interest, which meant showing that she was dismissed because of extreme

misconduct, i.e. criminal, or possibly if she alleged discrimination. *Id*.  Because Shuer did not believe that she fell into one of those two categories, she failed to file a complaint with the commission. *Id*. at 481. The Court rejected the County's defense that Shuer had not exhausted her administrative remedies, because "a government entity will be estopped from asserting as a defense a failure to exhaust administrative remedies when a government agent has negligently or intentionally caused a party to fail to comply with a procedural precondition to recovery." *Id*. at 486.

> **2. Defendants Are Estopped From Asserting That Plaintiff Failed To Exhaust Her Administrative Remedies, Because The Defendants Misrepresented To Plaintiff That Her Time To Request An Appeal Of The City Manager's Decision To Medically Retire Her Had Expired.**

A letter written to Heath by Defendant City of Desert Hot Springs Assistant City Manager Jason Simpson, dated September 19, 2011, informed Plaintiff that the City had *"proceeded to file an application for Non-Industrial Retirement on your behalf"* (FAC ¶ 270-272). The September 19, 2011 letter went on to inform Plaintiff that she had thirty days "*from the date **you receive a copy of this package**"* to file an appeal. Although the letter is dated September 19, 2011, the envelope the letter was delivered in was stamped on October 6, 2011 (FAC ¶ 272.)  The letter was sent via certified mail, and Plaintiff was not home when the letter carrier attempted to deliver the letter, so the letter carrier left a notice at Plaintiff's home informing her that a certified letter was waiting for her at the post office. The postal employee wrote *"NL 10 8 11"* on the envelope, "NL" meaning "notice left" (*See*, Exhibit "F", HEATH DECL, p.2.)  Plaintiff picked-up the letter from Post Office on October 12, 2011 (*See*, Exhibit "F", HEATH DECL, p.2.; Track & Confirm Printout from U.S. Postal Service website.)  Thus, pursuant to the City's letter of September 19, 2011 to Plaintiff, she had thirty days from October 12, 2011 to "Appeal."

On October 31, 2011, Plaintiff emailed Assistant City Manager Jason Simpson ("SIMPSON"), and told him that she was no longer represented by counsel in this matter, and asked him for the deadline to file her appeal of the City Manager's decision to

medically retire her (HEATH DECL ¶ 56.)  On October 31, 2011, Plaintiff received an email from SIMPSON telling her:

> *"You are represented by an attorney on this matter, and we are unable to give you any legal advice. The City served you with its Determination of Non-Industrial Disability on September 19, 2011 and your attorney received a copy of the City's Determination of Non-Industrial Disability on September 20, 2011."*

(HEATH DECL ¶ 59.)

On November 7, 2011, Heath filed a letter with the City Clerk's Office (addressed to Defendant Simpson) informing him that her attorney (Dale Nowicki), was no longer representing her, and that she would like a two week extension to "formulate" her appeal, as she no longer had an attorney (FAC ¶ 273; HEATH DECL ¶ 61.)  In response, Defendant Simpson wrote a letter to Heath dated November 8, 2011 acknowledging her request and informing her that the thirty day notice was served on September 19, 2011 and received by her attorney on September 20, 2011. Defendant Simpson went on in the letter, denying Heath's request for an extension to "file her appeal", and, again informed Heath that the deadline to appeal was October 20, 2011, which had now passed. HEATH DECL ¶ 62. Furthermore, the letter states that, (". . . *it is the City's position that the deadline for any appeal was October 20, 2011.*"  HEATH DECL ¶ 62.

Notwithstanding the fact that the actual deadline to appeal was November 11, 2011[16], having recently been abandoned by her attorney, Plaintiff relied to her detriment upon the representation made by SIMPSON that the time to appeal had passed. Accordingly, just as the plaintiffs in *Shuer*, *Denny*, and *West Lake Community College*, Plaintiff was misled by SIMPSON to her detriment.  Therefore, the defendants should be estopped from asserting that Plaintiff failed to exhaust her internal administrative remedies. Moreover, under the circumstances, as any further attempt by Plaintiff to request her appeal would have been futile, even though she still had two days to request

---

[16] Thirty days from the date she received the letter from Defendant Sampson; October 12, 2011.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

her appeal. The City took the position that the time to appeal had passed on October 21, 2011, and induced Plaintiff into refraining from pressing her appeal by telling her that she couldn't do so now. Accordingly, since to do so would have been futile, Plaintiff is excused from having to exhaust her internal administrative remedy. *See, Mokler v. County of Orange*, 157 Cal.App.4th 121 (2007); *Anton v. San Antonio Comm. Hosp.* 19 Cal.3d 802 (1977.)

> **3.    Plaintiff Did Not Fail To Exhaust Her Internal Administrative Remedies Because The Memorandum Of Understanding Between The City And The Desert Hot Springs Police Association Does Not Provide For An Administrative Remedy For Fitness For Duty Hearings.**

The requirement of exhaustion of administrative remedies does not apply if the remedy is inadequate. *Ogo Associates v. City of Torrance*, 37 Cal.App.3d 830, 834 (1974); *Anton v. San Antonio Comm. Hosp.* 19 Cal.3d 802 (1977.) The Memorandum of Understanding ("MOU") between the City and the DHS Peace Officers Association, a copy of which is attached as Exhibit "D" to Plaintiff's request for judicial notice, does not provide for fitness for duty hearings; it only provides for hearings for discipline. Accordingly, as there is no provision for fitness for duty hearings, Plaintiff is excused From having to exhaust something that doesn't exist. Moreover, Plaintiff is presently Appealing her involuntary disability retirement to the PERs system; something wholly separate and distinct from Appealing what was an underhanded termination in diguise. Defendant's motion to dismiss should be denied.

> **4.    Plaintiff Did File An Appeal Of The City's Decision To Retire Her.**

Although Plaintiff shows that the ("MOU") between the City and the DHS Peace Officers Association does not provide for fitness for duty hearings, all that she needed to do to appeal the City Manager's decision to retire her is to file a notice with the City Clerk stating "I appeal." That being said, it is evident from the November 7, 2012 letter that Plaintiff desired to appeal, and that's all that was required of her. Defendant's Motion to dismiss should be denied.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT

24

**IV.    AS DEFENDANTS WERE NOT SUED IN THEIR OFFICIAL CAPACITIES, BUT AS INDIVIDUAL PERSONS, DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED.**

**V.    AS PLAINTIFF'S FIRST AMENDED COMPLAINT CONTAINED SUFFICIENT FACTS TO SUBJECT THE DEFENDANTS TO LIABILITY IN THIS ACTION, DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED.**

**VI.    PLAINTIFF PROPERLY AND TIMELY COMPLIED WITH THE REQUIREMENTS OF THE CALIFORNIA TORT CLAIMS ACT.**

As shown by Exhibits "A" and "B" attached to Plaintiff's Request For Judicial Notice, on March 28, 2012 Plaintiff filed her Government Tort Claim with the City (Exhibit "A"), and on March 30, 2012, Plaintiff filed her Amended Government Tort Claim with the City. Her lawsuit was actually filed on March 19, 2012, and when she got the reject on her tort claims, she filed an amended complaint with this Honorable Court.

**VII.    DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY FROM SUIT.**

No reasonably well trained peace officer could have reasonably believed that it was legal to retaliate against Plaintiff for her complaining of, and testifying about criminal conduct by the DHSPD. Notwithstanding *Huppert*, the state of the law still was that deposition testimony and statement that were not made pursuant to a peace officer's official duties were entitled to First Amendment protection. As Plaintiff was out on a medical leave of absence from DHSPD when she made the October 20, 2009 statements to the FBI about DHSPD crimes, she had no professional duties, and her statements to the FBI were not made pursuant to her job duties, but as a private citizen. Defendants' Motion to dismiss should be denied.

Dated: January 9, 2013                    _____/S/_____
                                          JERRY L. STEERING

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION IN CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT